IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

PAMELA DELOISE WILSON,     )
    Plaintiff,            )
                            )
v.                          )        CIVIL ACTION NO. 15-00080-N
                            )
CAROLYN W. COLVIN, Acting    )
Commissioner of Social Security,  )
    Defendant.           )

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Pamela Deloise Wilson ("Wilson") has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her protective applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* By the consent of the parties (*see* Doc. 19), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Doc. 20).

Upon consideration of the parties' briefs (Docs. 13, 14) and the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s)])"),[1] the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 17, 18).

## I.      Procedural Background

Wilson protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") on February 19 and February 14, 2013, respectively, alleging disability beginning February 10, 2013.[2]  After her applications were initially denied, Wilson requested a hearing on her applications, which was held before an Administrative Law Judge ("ALJ") for the SSA on April 16, 2014.  (R. 16).

On July 18, 2014, the ALJ issued an unfavorable decision on Wilson's applications, finding her "not disabled" under the Social Security Act.  (*See* R. 17 - 26). Wilson requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review (R. 8), which denied her request on December 10, 2014.  (R. 1 - 4).

On February 13, 2015, Wilson filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's December 10, 2014 final decision.  (Doc. 1).  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council."); 42 U.S.C. § 1383(c)(3) ("The final

---

[2]      "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a). The Social Security Act's Supplemental Security Income ('SSI') is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)."      *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).
       "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.").

## II.   Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid. Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted). In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for DIB and SSI requires that the claimant be disabled. 42
> U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is
> unable "to engage in any substantial gainful activity by reason of a
> medically determinable physical or mental impairment ... which has
> lasted or can be expected to last for a continuous period of not less than 12
> months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015)

(per curiam) (unpublished).[3]

> The Social Security Regulations outline a five-step, sequential evaluation
> process used to determine whether a claimant is disabled: (1) whether the
> claimant is currently engaged in substantial gainful activity; (2) whether
> the claimant has a severe impairment or combination of impairments; (3)
> whether the impairment meets or equals the severity of the specified
> impairments in the Listing of Impairments; (4) based on a residual
> functional capacity ("RFC") assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's RFC, age, education,
> and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v);

*Phillips*, 357 F.3d at 1237-39).[4]

"These regulations place a very heavy burden on the claimant to demonstrate

both a qualifying disability and an inability to perform past relevant work." *Moore*, 405

F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In

determining whether the claimant has satisfied this initial burden, the examiner must

consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of

examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they
may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014). *See also*
*Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007)
("Unpublished opinions are not controlling authority and are persuasive only insofar as
their legal analysis warrants.").

[4] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual
steps of this five-step sequential evaluation.

work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)).  "These factors must be considered both singly and in combination.  Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a plaintiff proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  Finally, but importantly, although "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

"When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

## III.   <u>Claims on Judicial Review</u>

The ALJ reversibly erred in not giving adequate weight to the opinion of Wilson's treating physician, Glenton W. Davis, M.D., or, alternatively, in "fail[ing] in her duty to

6

develop the record by not recontacting Dr. Davis, or ordering a consultative examination."

## IV.   <u>Analysis</u>

At Step One, the ALJ determined that Wilson had "not engaged in substantial gainful activity since February 10, 2013, the alleged onset date." (R. 18). At Step Two, the ALJ determined that Wilson had the following severe impairments: congestive heart failure, hypertension, status post percutaneous transluminal coronary angioplasty, history of coronary atherosclerosis, anemia, heart murmur, diastolic dysfunction, hyperlipidemia, history of angina pectoris, and obesity. (R. 18). At Step Three, the ALJ found that Wilson did not have an impairment or combination of impairments that meets or equals the severity of the specified impairments in the Listing of Impairments. (R. 19). Wilson does not challenge any of the ALJ's determinations at Steps One through Three, or at Step Five finding a significant number of jobs in the national economy that Wilson can perform. Her claims of error concern the ALJ's analysis in Step Four.

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv)

& (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Wilson had the RFC "to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a) [sic[5]] except that she can occasionally push/pull controls with her right lower extremity; occasionally reach overhead with the left upper extremity.  She can occasionally climb ramps and stairs, but never climb ladders or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to extreme heat and cold, and large bodies of water.  She should avoid all exposure to unprotected heights, hazardous moving mechanical parts, and operating a motor vehicle for commercial purposes.  She is limited to simple, routine, and repetitive tasks."  (R. 19).

" 'Medical opinions are statements from physicians and psychologists or other

---

[5]     The ALJ appears to have erroneously cited to 20 C.F.R. §§ 404.1567(a) and 416.967(a), defining "sedentary work," rather than §§ 404.1567(b) and 416.967(b), defining "light work."

"To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations…Each classification…has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Light work is defined as work that 'involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.'…The regulations further state that '[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.' " *Id.* n.5 (quoting 20 C.F.R. § 404.1567(b), which is identical to § 416.967(b)).

acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians."  *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)).  However, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240.  *Accord, e.g.*, *Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished).

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing

treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).

The ALJ noted that, following a stent placement in 2006, Wilson was "followed by Dr. Glenton Davis, who indicated that her vitals were stable, lungs clear, and extremities stable." On February 10, 2013, Wilson went to a hospital because she was experiencing shortness of breath and fullness in her throat associated with chest pain." "Her hospital course was benign, she did well on chest pain medication, and she was discharged on February 12, 2013." On February 19, 2013, Wilson followed up with Dr. Davis, who "noted that her physical examination was unremarkable" (*see* R. 307), though "[a]t the same time he opined that [Wilson] has congestive heart failure and is one hundred percent disabled" (*see* R. 331). (R. 21).

On April 16, 2013, Wilson "returned to Dr. Davis for her coronary artery disease and history of congestive heart failure and it was noted that she was doing well with no problems and assessed with hypertension and congestive heart failure, stable…"  On May 11, 2013, Dr. Davis completed a Medical Source Statement, opining that Wilson "can occasionally lift and/or carry five pounds and frequently lift and/or carry one pound[,] can sit, stand, and/or walk one hour in an eight-hour workday[,] can occasionally push and/or pull with arms and legs, gross manipulate, fine manipulate, reach (including overhead), and operate a motor vehicle[,] can never climb stairs or ladders, balance, bend, stoop, or work around hazardous machinery[,] cannot be exposed to pulmonary irritants[, and] will miss more than four days per month."  (R. 21).

However, a month later, on June 13, 2013, Wilson underwent surgery for left heart catheterization, selective coronary angiogram, left ventriculogram, and cutting balloon to mild stent placement.  (R. 22).  Wilson "tolerated [the procedure] well" and was discharged the following day with instructions of no driving, working, exercising, or lifting over five pounds for only five days.  (R. 22).  The ALJ noted "the record reflects that the surgery was generally successful in relieving the symptoms."  (R. 23).  Indeed, notes from five doctor visits following the surgery (on June 27, June 28, August 13, November 12, and November 21, 2013, three of which were with Dr. Davis), reflect "normal" and "unremarkable" examinations, a lack of complaints from Wilson related to her congestive heart failure, and limitations primarily concerning only diet.  (*See* R. 22 – 23 [ALJ opinion discussing post-surgery medical evidence]; 344 [Dr. Davis's 6/28/2013 treatment notes]; 375 – 76 [Dr. Aksut's 6/27/2013 treatment notes]; 382 – 83 [Dr.

Aksut's 11/21/2013 treatment notes]; 386 – 87 [Dr. Davis's 11/12/2013 treatment notes];

389 [Dr. Davis's 8/13/2013 treatment notes]).

After noting all of this, the ALJ assigned "little weight" to "Dr. Davis' statement

of the claimant being 100% disabled, as well as his Medical Source Statement," stating:

> Normally a treating physician would be given great weight, but not if the opinion is inconsistent with his treating notes and the evidence of record of record [sic].  Not only is his opinion inconsistent with his examination notes, it is inconsistent with cardiology records.  There are no current restrictions indicated in cardiology records. At one time, the claimant was restricted to no driving, working, exercising, or lifting over five pounds, but this was **for only five days**.  The most recent cardiology treatment records reflect only dietary restrictions.  Even Dr. Davis' records do not reflect objective findings consistent with his opinion/assessment.  His most recent records show the claimant as doing well with stable extremities.  His treating notes do not even show the claimant reporting shortness of breath, dizziness, swelling, hip pain or the medication side effects that she testified too [sic].    Thus, I have given his opinion/assessment little weight and great probative value to treatment records as a whole.
>
> …
>
> The remaining medical evidence is essentially consistent with the overall picture of the claimant's medical status.  The claimant underwent surgery with a few restrictions that were for only five days.  Dr. Davis, who is given little weight, is the only provider to recommend more restrictions that are disabling.  However, as noted above, the objective evidence of record clearly outweighs his assessment/opinion.  I decline to accept his position over the rest of the evidence, as it appears to be inconsistent with the entire picture.  I cannot even say that his assessment relies heavily on the claimants complaints, as his most recent (2013) notes do not reflect any complaints, as described by the claimant at the hearing.

(R. 23 – 24).

The ALJ clearly stated the weight given to Dr. Davis's opinions – "little" – and

articulated several reasons that the Eleventh Circuit has recognized as "good cause" for

assigning less than substantial weight to a treating physician's opinion – his opinions

were not bolstered by the evidence, evidence supported a contrary finding; and his

opinions were inconsistent with his own medical records.  *See Winschel*, 631 F.3d at 1179.  All that remains for this Court to determine is whether this decision is supported by substantial evidence.  It is.

First, as the Commissioner points out, Dr. Davis's opinion that Wilson was "100% disabled" is not considered a medical opinion under the Social Security regulations, and the ALJ was not required to accept it because "the resolution of that issue is reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d). 'A statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the claimant is] disabled.' *Id.* §§ 404.1527(d)(1), 416.927(d)(1)." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. Jan. 16, 2013) (per curiam) (unpublished).  *See also Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. Oct. 26, 2007) (per curiam) (unpublished) ("The ALJ correctly noted that the opinion that Lanier was unable to work was reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e) (explaining that a physician's opinion that a claimant is 'disabled' or 'unable to work' is not a medical opinion and that this opinion is reserved exclusively to the Commissioner).").  Moreover, though Dr. Davis opined at the time of Wilson's February 19, 2013 examination that she was "100% disabled" (*see* R. 331), his treatment notes from that exam reflect unremarkable objective findings.  (*See* R. 307 (noting that "vital signs stable," "lungs are clear," "CV normal," "abdomen benign," and "extremities stable")). [6]  Therefore, the ALJ's observation that his "100% disabled" opinion was inconsistent with his treatment notes

---

[6] Dr. Davis's treatment notes from the February 19, 2013 examination simply note: "Patient disabled." (R. 307).  The "100% disabled" opinion was issued in a separate letter, also dated February 19, 2013, addressed "to whom it may concern" and stating, in full: "Ms. Pamela Wilson is a patient of mine diagnosed with Congestive Heart Failure.  Due to her medical condition she is 100% disabled." (R. 331).

is supported by substantial evidence.

Second, both of Dr. Davis's opinions were issued prior to Wilson's June 13, 2013 surgery, which the ALJ noted was "generally successful in relieving the symptoms." (R. 23). The post-surgery medical evidence of record supports this determination. Thus, substantial evidence supports the ALJ's decision to give less weight to Dr. Davis's pre-surgery opinions because, whatever weight they may have carried prior to Wilson's surgery, their continued viability was not supported by post-surgery medical evidence.[7]

Wilson defends Dr. Davis's opinions as being "supported by the medical evidence of record that existed at the time Dr. Davis gave" them but acknowledges that "things significantly changed in Ms. Wilson's case[ following her surgery], and it is unclear whether or not [Dr. Davis's] opinion continued to represent Ms. Wilson's limitations…" (Doc. 13 at 8 – 10). This leads into Wilson's second claim of error, which asserts that the ALJ was required to either recontact Dr. Davis for a new opinion or order a consultative examination to assess Wilson post-surgery, due to "the lack of medical evidence existing after Ms. Wilson's operation" – in particular, the lack of "opinions provided from any source whatsoever regarding Ms. Wilson's ability to function" after the surgery. (*Id.* at 10, 13).

> Although the ALJ generally has an obligation to develop the record, the ALJ did not err by failing to inquire into Ingram's mental capacity. Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision. *Doughty v. Apfel,* 245 F.3d 1274, 1281

---

[7] The ALJ found Wilson's subjective testimony regarding her symptoms and limitations to be "inconsistent and unpersuasive." (R. 23). Wilson does not challenge that finding on judicial review.

(11th Cir. 2001) (citation omitted).

*Ingram*, 496 F.3d at 1269.  *See also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.").

Regarding an ALJ's "duty" to recontact a treating physician,

20 C.F.R. §§ 404.1520b(b) and 416.920b(b) both state: "If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." Thus, a mere determination that a medical opinion is inconsistent does not require an ALJ to recontact the source before discounting that evidence. An ALJ, among other courses of action, "**may** recontact [the claimant's] treating physician, psychologist, or other medical source" if "the evidence is consistent but [the ALJ] ha[s] insufficient evidence to determine whether [the claimant is] disabled, or if after weighing the evidence [the ALJ] determine[s he] cannot reach a conclusion about whether [the claimant is] disabled ..." 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (emphasis added). *See also* Social Security Ruling (SSR) 96–5P (effective July 2, 1996) ("[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."). Even then, the regulations give ALJs discretion in "determin[ing] the best way to resolve [an] inconsistency or insufficiency[,] ... depend[ing] on the nature of the inconsistency or insufficiency." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). *See also Williams v. Comm'r, Soc. Sec. Admin.,* 580 F. App'x 732, 734 (11th Cir. Sept. 10, 2014) (per curiam) (unpublished) ("When evidence, including opinion evidence, is inconsistent, the ALJ has no duty to consider it. *See* 20 C.F.R. § 416.920b (providing that, if any record evidence is inconsistent, the ALJ will take the additional step of weighing the relevant evidence to determine disability)."); *Harris v. Colvin,* 584 F. App'x 526, 528 n. 1 (9th Cir. Aug. 15, 2014) (per curiam) (unpublished) ("The agency was not required ... to re-contact Dr. Lindstrom, since the evidence was sufficient to make a determination as to disability. 20 C.F.R. § 404.1520b(c); *McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011) (noting that '[r]ejection of the treating physician's opinion ... does not by itself trigger a duty to contact the physician for more explanation.')."); *Beasley v. Colvin,* 520 F. App'x 748, 752 (10th Cir. April 10, 2013)

(unpublished) ("An ALJ need only recontact a treating source '[i]f evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled.' *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1520b(c). Although the ALJ noted that the handwritten notes were difficult to read, he further noted that 'Dr. Linden also completed a checklist, indicating multiple mental limitations.'... The ALJ then discussed those findings. The ALJ had no duty to recontact Dr. Linden in this situation because the evidence was adequate to evaluate whether Ms. Beasley was disabled.")...

*Hale v. Colvin*, Civil Action No. 14-00222-CG-N, 2015 WL 3397939, at *10 (S.D. Ala. Apr. 24, 2015) (footnote omitted), *report and recommendation adopted*, 2015 WL 3397628 (S.D. Ala. May 26, 2015).

Wilson's claim that there was a "lack of medical evidence existing after [her] operation" is incorrect.  As previously discussed, treatment notes from five doctor visits taking place after Wilson's surgery indicated "normal" and "unremarkable" findings and a lack of major health complaints from Wilson.  Though Wilson's brief points to symptoms noted in these records that may suggest possible limitations (e.g. high blood pressure, refiling nitroglycerin prescription for chest pain) warranting further medical investigation, read as a whole the post-surgery treatment notes do not indicate that Wilson's physicians were significantly concerned about these symptoms.  Moreover, this Court may not substitute its own judgment for the ALJ's, nor may it reverse the Commissioner even when a preponderance of the evidence may support a different conclusion.  Here, the ALJ, after examining the medical evidence of record, determined "that the record reflects that the surgery was generally successful in relieving [Wilson's] symptoms" and that Wilson was not disabled.  This finding is supported by substantial record evidence, and the Court finds no reason to conclude that the record was so deficient that the ALJ was required to order a consultative examination or

recontact Dr. Davis. *Cf. Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. Feb. 19, 2010) (per curiam) (unpublished) (" 'In evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.' *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995) (quotations omitted). The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports her allegations of disability.' *Id.* at 936 n.9. []The ALJ did not discount Robinson's limitations, as it found that she did in fact have severe impairments that prevented her from performing her past relevant work. In light of the substantial evidence in the record, including the vocational expert's testimony, the ALJ had the necessary information to determine Robinson's impairments, her residual functional capacity, and her ability to work.  We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors. Moreover, Robinson has not shown that she suffered prejudice as a result of any failure of the ALJ to perform further factfinding, because there is no evidence ALJ's decision would have changed in light of any additional information. Consequently, the ALJ did not err by not requesting an additional consultative examination or by failing to recontact treating or examining physicians.").[8]

Because Wilson has not shown that the ALJ erred in assigning little weight to Dr. Davis's opinions, nor has she shown that the ALJ failed to adequately develop the

---

[8] Moreover, as the undersigned has previously observed, "[n]othing in the regulations requires the ALJ to accept at least one medical opinion before rendering a decision—indeed, an ALJ may make a disability determination without any medical opinion in the record." *Hale*, 2015 WL 3397939, at *11.  *See also* 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) ("Evidence that you submit or that we obtain **may** contain medical opinions." (emphasis added)).

record, the Commissioner's decision denying her applications for DIB and SSI is due to be **AFFIRMED**.

V.    <u>Conclusion</u>

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued December 10, 2014, denying Wilson's applications for DIB and SSI benefits is **AFFIRMED** under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 24th day of September 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**